# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ROSA B. A.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

Case No. 2:19-cv-02550-AFM

**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER**

Plaintiff filed this action seeking review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In April 2015, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since January 26, 2012. Plaintiff's applications were denied. (Administrative Record ["AR"] 159-172.) A hearing took

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

place on February 15 and August 29, 2017 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 121-158.)

In a decision dated December 6, 2017, the ALJ found that Plaintiff suffered from the following severe impairments: atypical chest pain; dysfunction of major joints with pain in the bilateral knees, left ankle, right foot, back, and bilateral upper extremities; and obesity. (AR 72.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the following restricted range of light work: she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for up to six hours per workday; sit for up to six hours per workday; frequently climb stairs; occasionally stoop; occasionally reach overhead with the left upper extremity; and never climb ladders, balance, kneel, crouch, or crawl. (AR 73.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work as a sales representative. (AR 77-78.) Recognizing that Plaintiff's work as a sales representative may not have constituted substantial gainful activity, the ALJ alternatively found Plaintiff could perform work existing in significant numbers in the national economy. (AR 78-79.) Accordingly, the ALJ concluded that Plaintiff was not disabled. The Appeals Council subsequently denied Plaintiff's request for review (AR 1-9), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

1. Whether the ALJ properly evaluated the medical opinions of treating physician Richard J. Feldman, M.D., and medical examiner Jeffery Berman, M.D.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial

evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**I.     Relevant Medical Evidence**

Plaintiff reported knee pain in January 2012 resulting from a work-related injury. (AR 500-501.) Left knee x-rays showed no evidence of bony, joint space, or soft tissue abnormality, and no fracture. (AR 503, 749.) An MRI was performed in February 2012, revealing a horizontal signal in the anterior horn of the lateral meniscus with suggestion of communication with the inferior articular margin of the free edge, which suggested a possible meniscal tear. The results were similar in the posterior horn of the lateral meniscus. There was no frank tear, no bone mass, normal tendinous and ligamentous structures, and mild joint effusion. (AR 468-470.) On March 26, 2012, Dr. Feldman performed left knee arthroscopy and partial meniscectomy. (AR 438.) By July 2012, Dr. Feldman found only mild tenderness, no instability with stress testing, negative anterior drawer and Lachman maneuver. Dr. Feldman noted that Plaintiff's complaints were greater than one would expect after knee arthroscopy. He prescribed Motrin to reduce inflammation and for pain. Dr. Feldman opined that Plaintiff could return to at least modified work duties. (AR 412.)

In August 2012, a second MRI of Plaintiff's left knee showed diminutive size of the lateral meniscus, compatible with prior surgery, but no evidence of meniscal

tear. (AR 468, 968.) During an August 2012 physical examination, Dr Feldman found no effusion, mild diffuse tenderness, unrestricted range of motion, intact cruciate function with negative anterior and posterior sign and a negative Lachman maneuver. Gross stability of the knee was satisfactory. He noted that Plaintiff continued to complain of knee pain, but remarked that the MRI revealed no residual pathology that could account for her symptoms. He concluded that Plaintiff was able to work modified duties. He recommended viscosupplementation. (AR 402-403.) After an examination in September 2012, Dr. Feldman opined that Plaintiff could return to work with the restriction that she lift, pull and push no more than 10 pounds and that she perform limited kneeling or squatting. He noted that the insurance company had denied viscosupplementation. (AR 398, 400-401, 405, 409.)

An October 2012 examination revealed full flexion of the left knee, mild diffuse tenderness, some crepitus, no instability. An examination of Plaintiff's left hip was unremarkable. (AR 389-390.) Dr. Feldman recited Plaintiff's complaints and observed that her symptoms are "somewhat out of proportion to intraoperative findings and to the postoperative MRI." (AR 394.) He noted Plaintiff's claim that she was unable to return to her previous activity level and offered her a corticosteroid injection, but Plaintiff refused. Dr. Feldman opined that Plaintiff "has functional capacity limits. No prolonged standing or walking, limited kneeling and squatting, no heavy lifting, pushing and pulling based on her subjective complaints." (AR 394.)

In December 2012, Plaintiff reported additional symptoms stemming from her January 2012 injury – specifically, bilateral knee pain, mid and low back pain, neck pain, bilateral shoulder pain, and psychiatric complaints. (AR 650.) X-rays of Plaintiff's cervical spine revealed small calcifications of the anterior longitudinal ligament at C4-C5 and C5-C6; x-rays of the lumbar spine revealed decreased lordosis; x-rays of the bilateral shoulders revealed acromioclavicular degenerative joint disease; x-rays of the bilateral knees were normal. (AR 650-651.)

An August 2013 MRI of Plaintiff's left shoulder revealed enlargement and intermediate signal changes consistent with tendinosis, but no rotator cuff tear was detected. (AR 1049.) An MRI of Plaintiff's lumbar spine showed multifactorial moderate central canal stenosis at L4-L5 with mild foraminal narrowing, some slight flattening of the anterior thecal sac at L3-L4, and mild bulging of the L4-S1 disc with facet arthropathy, without evidence of significant central or foraminal stenosis. (AR 1050-1051.)

Additional x-rays were obtained in June 2014, after Plaintiff was involved in a motor vehicle accident. X-rays of Plaintiff's right knee and thoracic spine were unremarkable. (AR 534, 536.) Plaintiff's lumbar spine showed moderate facet arthropathy at L5-S1 without evidence of acute fracture or spondylolisthesis. (AR 535.)

In June 2016, Plaintiff's physical therapist noted that Plaintiff had participated in therapy, but did not comply with the onsite exercises and stretches. She also noted that while Plaintiff complained of pain, "she was not following the usual pattern of people suffering from pain and using trick movements." (AR 1056-1058.)

A July 2016 MRI arthrogram of Plaintiff's left knee showed a grade 1 signal intensity in the posterior horn of the medial meniscus, but a low likelihood an arthroscopically evident tear. There was thinning of the articular cartilage in the medial and lateral joint compartments. (AR 1055.)

Plaintiff underwent a consultative examination in April 2017, with Marvin Perer, M.D. Plaintiff's grip strength was 0 pounds of force with either hand, but Dr. Perer indicated that Plaintiff gave poor effort. (AR 1139-1140.) Plaintiff's exhibited no paraspinal muscle tenderness to palpation or muscle spasm in the cervical or lumbar spine. Her range of motion was grossly within normal limits in the cervical spine, but limited in the lumbar spine by reports of pain with flexion at 50 degrees and extension at 15 degrees. Straight-leg-raising was negative in the sitting and supine positions. (AR 1141-1142.) With regard to Plaintiff's upper extremities,

there was no tenderness, joint swelling, or deformities of the shoulders, elbows, wrists or hands. Plaintiff had normal range of motion with the exception of Plaintiff's shoulders, which were limited in abduction to 80 degrees bilaterally. (AR 1142.) Dr. Perer also found no tenderness, joint swelling, deformities, or crepitus of Plaintiff's lower extremities. Plaintiff had normal range of motion, but complained of pain in her knees. Neurological examination was normal, with no evidence of atrophy or fasciculation, and 5/5 strength in the upper and lower extremities without focal motor deficits. (AR 1142.) Plaintiff was able to get off and on the examination table without difficulty, did not require an assistive device to ambulate, and her gait was normal. (AR 1143.) Dr. Perer opined that Plaintiff was limited to carrying and lifting 20 pounds occasionally and 10 pounds frequently; standing and walking six hours in an eight-hour workday; sitting up to six hours in an eight-hour workday; limited to climbing stairs frequently; and precluded from climbing ladders, balancing, stooping, crouching, crawling or kneeling. (AR 1143.)

Pain management specialist, Raafat Mattar, M.D., examined Plaintiff in March and April 2017. Dr. Mattar found Plaintiff's cervical spine had normal range of motion with myofascial trigger points present, paraspinal spasm, normal range of motion of the shoulder joint and negative Hawkin's sign, no tenderness or swelling of the left knee, normal range of motion of the left knee, generalized painful and restricted lumbar range of motion, facet loading positive bilaterally, and a "hard time standing." He indicated that Plaintiff's neck and back pain was improved by physical therapy, and recommended a lumbar medial branch block and aqua therapy. (AR 1181-1184, 1187-1190.)

The ALJ noted the State agency reviewing physician's opinion that Plaintiff was capable of performing light exertional work. (AR 75, 164-168.) She also noted that the record included numerous workers' compensation assessments of either temporary total disability or temporary partial disability. (AR 76.)

## II. The ALJ's Consideration of the Medical Opinions

As Plaintiff points out, Dr. Feldman opined that she could lift no more than 10 pounds and could not engage in prolonged standing, walking or weightbearing. (*See* AR 394, 398-401.) Plaintiff also points out that Jeffrey Berman, M.D., an agreed medical examiner, opined that Plaintiff was precluded from prolonged weightbearing. (ECF No. 4, citing AR 1121.)[2] Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Feldman and Berman. For the following reasons, the Court finds Plaintiff's contention meritorious.

### A. Relevant Law

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If a treating or examining physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating or examining physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted). Because the opinions of Plaintiff's Drs. Feldman and

---

[2] Plaintiff cites a comprehensive orthopedic evaluation and report prepared in May 2016 in which Dr. Berman's report and opinion is summarized. According to the summary, Dr. Berman rendered this opinion after examining Plaintiff in September 2013. (AR 1118-1121.) It is unclear whether Dr. Berman's report is itself included in the record.

Berman[3] were contradicted by the opinion of the consultative examining physician (AR 1143) and the State agency physician (AR 164-168), the ALJ was required to provide specific and legitimate reasons for rejecting them.

**B.  Analysis**

In assessing the weight of the medical opinions, the ALJ began by noting that the State Agency physician and Dr. Perer (the consultative examiner) agreed that Plaintiff could perform a reduced range of light work. (AR 75, citing AR 159-168 and 1143.) The ALJ gave significant weight to those opinions, finding them consistent with the medical records (AR 75-76) and essentially adopted Dr. Perer's opinion regarding Plaintiff's functional capacity.

The opinions of both Dr. Feldman and Dr. Berman were rendered in the course of Plaintiff's workers' compensation case. With respect to these opinions, the ALJ stated:

> While the California workers' compensation assessments generated as part of the claimant's workers' compensation claim do not directly translate into Social Security terms, I find they are not inconsistent with my conclusion that the claimant is capable of a reduced range of light work as described above. However, I find no more severe limitations are warranted by the record to the extent that workers' compensation opinions can be interpreted as giving the claimant greater limitations. In fact, in June 2012, the claimant's workers' compensation doctor, Dr. Feldman, merely recommended one more month of physical therapy, and anticipated the claimant returning to the workforce in some capacity after that ([AR 417]). In addition, in October 2012, Dr. Feldman based the claimant's functional limitations on the claimant's subjective complaints, but noted the claimant's symptoms

---

[3] Dr. Feldman was a treating physician. Dr. Berman was a consultative examining physician. The law applies equally to both.

|  |  |
|---|---|
| 1 | were somewhat out of proportion to her intraoperative findings and to |
| 2 | the postoperative MRI ([AR 394]). |
| 3 | (AR 76-77.) |

The ALJ's analysis of Dr. Feldman's opinion does not satisfy the applicable law. To begin with, the ALJ's statement that the assessments are not inconsistent with her RFC determination is erroneous. Contrary to the ALJ's characterization, Dr. Feldman's opinions that Plaintiff was precluded from prolonged standing or walking and precluded from lifting more than 10 pounds directly conflict with the ALJ's RFC. Consequently, it appears that the ALJ failed to recognize that she was explicitly rejecting Dr. Feldman's opinions.

In addition, the ALJ's reasoning is insufficiently specific. The ALJ lumped together multiple opinions of the workers' compensation physicians, and appears to have failed to recognize Dr. Feldman as a treating physician. *See, e.g., Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (an ALJ cannot avoid the specificity requirements for rejecting treating physician's opinion by not mentioning the opinion and making findings contrary to it); *Angelica R. v. Saul*, 2019 WL 5618079, at *9 (C.D. Cal. Oct. 31, 2019) (ALJ failed to provide specific and legitimate reason for rejecting treating physicians' opinions where ALJ lumped together the opinions of multiple workers' compensation physicians and failed to acknowledge a particular physician's opinion).

The Court notes that the ALJ's decision does mention one reason for rejecting Dr. Feldman's opinion – namely, that it was based upon Plaintiff's subjective complaints, complaints which Dr. Feldman observed did not comport with the objective medical evidence. Nevertheless, the ALJ's failure to recognize Dr. Feldman as a treating physician, failure to recognize that some of Dr. Feldman's opinions directly contradicted the ALJ's RFC assessment, and failure to clearly identify which specific opinion or opinions that she rejected preclude the conclusion that this

constitutes a sufficiently specific and legitimate reason supporting the ALJ's decision.

Furthermore, the ALJ did not specifically address Dr. Berman's opinion. It is true that an ALJ is "not required to discuss every piece of evidence." *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). An ALJ must, however, discuss significant probative evidence. *See Howard*, 341 F.3d at 1012; *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Because Dr. Berman's opinion that Plaintiff is precluded from prolonged weightbearing constitutes significant probative evidence, the ALJ was required to explain why she rejected it. Yet the only specific reason provided by the ALJ – namely, Dr. Feldman's statement that his opinion was based upon Plaintiff's subjective complaints – does not appear to apply to Dr. Berman.

An ALJ's failure to properly evaluate a treating physician's opinion may be harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (*quoting Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). Crediting some or all of the opinions of either Dr. Feldman or Dr. Berman would likely have affected the ALJ's RFC and, consequently, the hypothetical posed to the VE. *See Ghanim*, 763 F.3d at 1166. Accordingly, the Court cannot conclude that the ALJ's error was harmless.

**REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from

conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 1/10/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.

11